Brian R. Weilbacher (SBN: 211472)
brianweilbacher@weilbacherlaw.com
Lisa D. Walker (SBN: 279644)
lisa@weilbacherlaw.com
Weilbacher & Weilbacher APC
5850 Thille Street, Suite 200
Ventura, California 93003
Telephone: 805.485.4575
Facsimile: 805.485.3646

Attorneys for Plaintiff Constance Hanson-Poulsen

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA –WESTERN DIVISION

CONSTANCE HANSON-POULSEN,
an individual;

           Plaintiff,

     v.

DEPARTMENT OF DEFENSE OF
THE UNITED STATES OF
AMERICA; DEPARTMENT OF THE
AIR FORCE; SECRETARY OF THE
AIR FORCE; NATIONAL GUARD
BUREAU; CALIFORNIA MILITARY
DEPARTMENT; CALIFORNIA AIR
NATIONAL GUARD; and DOES 1
through 50, inclusive;

           Defendants.

Case No.: 2:16-CV-05786

**COMPLAINT FOR
INJUNCTIVE/EQUITABLE
RELIEF AND DAMAGES:**

**(1) DISCRIMINATION IN
    EMPLOYMENT BASED ON SEX IN
    VIOLATION OF TITLE VII;**

**(2) RETALIATION IN EMPLOYMENT IN
    VIOLATION OF TITLE VII;**


**DEMAND FOR JURY TRIAL**

COMES NOW plaintiff Constance Hanson-Poulsen who is informed and believes, and based thereon alleges as follows:

**PARTIES**

1.     Plaintiff Constance Hanson-Poulsen ("plaintiff" or "Poulsen") was and is a person residing in the State of California.

2.     Defendant the United States Department of Defense ("defendant") is and was a United States of America government department existing under the laws of the United States of America charged with directing and coordinating various other agencies of government, including the U.S. Department of the Air Force.

3.     Defendants the United States Department of the Air Force and the Secretary of the Air Force ("defendants") are and were a United States of America government department and that department's executive officer, respectively, both operating under the laws of the United States of America.

4.     Defendant the National Guard Bureau ("defendant") is a United States of America government department and agency operating under the laws of the United States of America and responsible in part with directing and controlling the California Military Department and the California Air National Guard.

5.     Defendants the California Military Department and the California Air National Guard ("defendants") are government departments and agencies operating under the laws of the United States of America and the State of California.

6.     During the relevant timeframe, Brian Kelly ("Kelly") has been jointly employed by defendants and other related agencies as a supervisor and commander, and works and resides in the County of Ventura.  Kelly as an agent of defendants has been responsible for various duties in connection with defendants' operations, including, without limitation, supervising, directing the work of, and making personnel decisions concerning defendants' employees, including specifically plaintiff Poulsen.

7.     The true names and capacities of such additional defendants, whether

COMPLAINT

individual, corporate, associate, affiliate, or otherwise, sued herein as DOES 1 through 50, inclusive, are currently unknown to plaintiff. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of the defendants designated hereinafter as DOES when such identities become known.

8.     Plaintiff is informed and believes, and thereon alleges, that defendants and the Doe defendants are the partners, agents, affiliates, or principals and co-conspirators of each other; that defendants and the Doe Defendants performed various acts and conduct alleged herein within the course and scope of their employment or agency, aided and abetted the performance thereof, or knowingly acquiesced in, ratified, and/or accepted the benefits and consequences of such acts and conduct, and therefore each of the defendants and the Doe defendants is jointly and severally liable to the extent of the liability of any other defendant as alleged herein.

9.     Unless otherwise specified, when reference is made in the complaint to an act, deed, or conduct of defendant or defendants, such allegation means that defendant or defendants engaged in the act, deed, or conduct by or through one or more of its co-defendants, officers, directors, managers, members, agents, subordinates, employees, or representatives, who were actively engaged in the management, direction, control, or transaction of the business, operations, and affairs of defendants.

10.     Supervisor Kelly held a supervisory and managerial position over plaintiff, and at all relevant times hereto was a managing agent of defendants.

11.     Plaintiff is further informed and believes, and thereon alleges, that whenever and wherever reference is made to individuals who are not named as a defendant in this complaint, but were officers, managers, employees and/or other agents of a defendant, such individuals, at all relevant times, acted on behalf of such defendants named in this complaint within the scope of their respective employment or agency.

12. At all times relevant hereto, defendants with the Doe defendants and other related agencies and entities were joint employers of plaintiff as that term is defined and used and applied in connection with the subject statutes and related law, and defendants are subject to such statutes and laws, and as such, defendants are prohibited from committing various acts, including, without limitation, the discrimination, retaliation, and other adverse treatment alleged herein.

## ALLEGATIONS COMMON TO CLAIMS

13. Specific facts, events, and circumstances relating to and illustrating defendants' violative conduct as alleged herein include, without limitation, the following:

14. For approximately 24 years – from 1991 until the spring of 2015 – plaintiff Poulsen was a civilian employee of defendants working at the Channel Islands Air National Guard Station, jointly employed by defendants and related agencies.

15. During her employment, plaintiff received numerous promotions. Starting in approximately 2013 until her wrongful termination in 2015, Poulsen held the position of Chief of Information Protection, and in this capacity Poulsen principally handled duties relating to managing and controlling staff's and other individuals' access to information.   At the time of her termination, plaintiff was the most senior female at the Channel Islands Air Station.

16. Plaintiff Poulsen was a female employee, and at the time of her termination was 49 years old.   *Significantly, as a result of her service in excess of 20 years, plaintiff's career and lifetime pension and employee retirement benefits would have vested within months – that is, if she had not been wrongfully terminated by defendants*.

17. As set forth herein, despite this, plaintiff was terminated for illegal and retaliatory reasons, and without any purported explanation, except for the false and pretextual statement that her "services were no longer needed."

COMPLAINT

18.     Plaintiff properly and competently performed her job duties, and received positive reviews, comments, and commendations in connection with her work before being subject to defendants' adverse and wrongful treatment.

19.     Plaintiff also consistently received positive performance evaluations during her 24 year career with defendants.  For example, in her 2014 and 2015 performance evaluations (which occurred shortly before she was wrongfully terminated) plaintiff's performance was rated as a four out of a possible five rating in all areas.

20.     Beginning in early 2013, Brian Kelly was appointed to a commander position at the air station and became plaintiff's direct supervisor. Kelly's gender is male.

21.     During this timeframe, it was apparent to plaintiff that there existed an abiding environment of discrimination at the air station, including specifically against women.  This included the existence of a "boys club" environment where men received more favorable treatment and female employees were discriminated against, including by being passed over for promotions and hiring, given less desirable assignments, and being subject to other hostile and adverse treatment.

22.     During this timeframe, several other employees had made complaints to defendants concerning discrimination and other adverse treatment against women by defendants and defendants' employees.  Further, in her position as the station's sexual assault representative and liaison, plaintiff was personally aware of various instances of disparate treatment of female employees and reports of this, including, without limitation, the failure to promote and/or hire qualified female employees and adverse, differential treatment of female employees with respect to duties and assignments.

23.     Adding to this, on several occasions in 2014 plaintiff expressed concerns and objected directly to supervisor Kelly regarding contemplated personnel changes that favored men but disadvantaged women.  This included

1   personnel and duty changes that adversely affected plaintiff specifically.  As
2   plaintiff had observed with other women at the station, defendant Kelly was
3   unfairly favoring the promotion, protection, and development of other males over
4   plaintiff and plaintiff objected to this.  Ominously, on one occasion, defendant
5   Kelly asked plaintiff pointedly, "Do you think I'm out to get you?"

6   24.   In approximately December of 2014, defendants assigned staff to
7   attempt to investigate and address the discriminatory environment that existed,
8   including the various complaints of gender discrimination that were occurring.
9   These were complaints that must have come independently from plaintiff since at
10  that point Ms. Poulsen had not made any complaint prompting an outside
11  investigation.

12  25.   This included holding a group meeting with defendants' employees
13  and supervisors.  At the meeting, those in attendance at the meeting (including
14  plaintiff) were solicited to provide information relating to gender and workplace
15  bias issues.  In response, plaintiff openly expressed concerns and criticisms relating
16  to the treatment of female employees, including making statements that were
17  adverse to and critical of defendants' male supervisors and employees.

18  26.   Following this group meeting, Ms. Poulsen also spoke with
19  investigators again because the investigators requested additional information
20  concerning her observations and experiences.  Plaintiff again spoke directly with
21  investigators and plaintiff expressed criticisms and objections concerning the
22  workplace and defendants' supervisors, including identifying the actions of
23  supervisor Kelly and others as contributing and fostering the environment of
24  improper gender bias and favoritism that adversely impacted the women staff,
25  including plaintiff herself.

26  27.   Plaintiff's objections to defendants' conduct and the ongoing
27  environment of gender bias culminated with plaintiff's wrongful, discriminatory,
28  and retaliatory termination by Kelly.

COMPLAINT

28.    Despite there being ample work and funding for plaintiff's position through September of 2015 (which was later renewed again), on or about March 5, 2015, plaintiff was told by Kelly that she was terminated effective 30 days from that date.  This was only months before Ms. Poulsen's lifetime pension and employee retirement benefits would have vested, and this termination prevented the benefits from vesting and prevented Ms. Poulsen from receiving those benefits she had worked her career to obtain.  No other similarly situated employees were laid off or terminated.

29.    Further, despite the fact that she had been employed for 24 years with defendants and there was no prior indication that she was going to be terminated or that her work would otherwise end, plaintiff was never told why she was being terminated other than that her "services were no longer needed."

30.    This so-called "reason" was false and pretextual.  Contrary to defendants' representations, plaintiff's work continued to be needed and continued to be performed.  However, rather than have plaintiff in the position, a lesser qualified male was given plaintiff's position and duties.

31.    Moreover, defendants themselves were unable to keep their story straight.  At the time of her termination, supervisor Kelly told plaintiff that the termination decision was not made by him, but instead by a headquarters office in Sacramento. However, when plaintiff spoke with a headquarters human resources manager, that person indicated the termination decision was unexpected and came from Kelly at the station level.

32.    In connection with her termination, plaintiff also sought information and assistance from a headquarters' human resources office relating to her termination, including asking whether there was any available recourse to contest or reverse the termination decision.  In response, plaintiff was told that there was nothing she could do concerning her termination and there was no internal administrative remedies or other recourse for her to seek relief.

COMPLAINT

33.     Defendants' conduct and adverse treatment of plaintiff has been unlawfully discriminatory and retaliatory towards plaintiff, and also violative of plaintiff's rights and protections under federal and state anti-discrimination and anti-retaliation laws, and defendants' related obligations as further alleged herein. In addition to the gender discrimination alleged herein, defendants' actions against plaintiff have been discriminatory and retaliatory based on and/or related to plaintiffs' age in that plaintiff was denied pension retirement and other career benefits she would have otherwise obtained.  While other specific age-related aspects of defendants' conduct is still being investigated and subject to further discovery by plaintiff's counsel, plaintiff believes plaintiff's age and seniority in her career functioned in part in relation to defendants' discrimination and retaliation against her and plaintiff accordingly reserves the right to assert claims based on this as additional information is obtained regarding this.

34.     Defendants and other persons who committed the unlawful acts described herein were managing agents.  The unlawful acts described herein were committed with oppression, fraud and/or malice, or in conscious, reckless, and callous disregard of plaintiff's rights and the consequences likely to result.

35.     Through this wrongful conduct, plaintiff has suffered harm and continues to suffer harm.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

36.     Plaintiff has timely complied with, is excused from, and/or has exhausted any applicable administrative process, grievance process, claims statute, or other internal or administrative remedies, and may and should permissibly be permitted to proceed with this action without requirement for any further resort to such.

37.     On May 5, 2016, the U.S. Equal Employment Opportunity Commission (the "EEOC") issued a right to sue notice advising Ms. Poulsen that she may file a lawsuit under federal law (including Title VII) within 90 days of

- 7 -

receipt of that notice.  Attached hereto as Exhibit A is a true and correct copy of the Right to Sue Notice directing that Ms. Poulsen may and must file suit within 90 days of the issuance of that notice.

38.    Further, as alleged above, after being told she was being terminated, plaintiff sought information and assistance from the headquarters' human resources office relating to her termination, and in response plaintiff was affirmatively told that there was nothing she could do to contest her termination, and there was no internal administrative remedies or other recourse for her to seek relief.

39.    Despite these representations, following this, plaintiff attempted to identify and exhaust various internal and other administrative remedies.  Because the terms and conditions of Ms. Poulsen's employment as well as the day to day duties of Ms. Poulsen work were controlled and dictated by state and federal agencies and employees, Ms. Poulsen sought to identify and exhaust both state and federal internal administrative remedies and throughout this time defendants and other relevant agencies have been repeatedly advised of plaintiff's claims, and efforts to raise and address these.  This has included, without limitation, the following:

    A.    On December 28, 2015, plaintiff submitted a written charge to the EEOC concerning the employment discrimination and retaliation to which plaintiff has been subjected.  Attached hereto as Exhibit B is a true and correct copy of that December 28, 2015 written charge that was served on the EEOC.  In response to this, the EEOC issued its right to sue notice (which is attached as Exhibit A) directing that plaintiff must file suit within 90 days of receipt of that notice.

    B.    Further, within the time provided by law, plaintiff requested and received a Department of Fair Employment and Housing ("DFEH") Right to Sue Letter dated December 28, 2015.

COMPLAINT

1       C.    Additionally, as part of these efforts, Ms. Poulsen also timely

2           submitted a notice and advisement of claim to the State of California

3           Victim Compensation and Government Claims Board ("California

4           Claims Board") and directly served the notice and advisement of

5           claim on the California State Military Department in August 2015

6           which is a department and related agency of all defendants herein.  In

7           response, on September 21, 2015, the California Claims Board

8           advised via a letter that the "court system is the appropriate means for

9           resolution" and that further action to allow court process would take

10          place on October 15, 2015 by the California Claims Board.

11          Subsequently, Ms. Poulsen received a letter, dated October 23, 2015,

12          from the California Claims Board indicating that litigation may be

13          initiated by Ms. Poulsen.  The "Military National Guard" was copied

14          on both of these letters from the California Claims Board.  Ms.

15          Poulsen received no response regarding this from the California

16          Military Department or the other defendants named herein.

17      40.    In short, plaintiff has diligently and consistently sought to timely

18  pursue and satisfy any pre-lawsuit administrative procedures that may exist in

19  connection with her claim before filing a lawsuit, while still complying with any

20  resulting due dates and deadlines that arose by participating in such administrative

21  procedures – such as, for example, the EEOC right to sue deadline.

22      41.    Relevant to Ms. Poulsen's instant complaint, the May 5, 2016 EEOC

23  right to sue notice that was issued dictates that Ms. Poulsen must file her action

24  within 90 days of receipt of the EEOC Right to Sue notice – *i.e.* by early August

25  2016.

26      42.    In addition to defendants' prior affirmative statements to plaintiff that

27  no administrative process or remedies existed or other recourse was available to

28  plaintiff, plaintiff (personally and through her counsel) has since communicated

with an estimated 15 different National Guard offices and individuals and related EEO offices concerning whether internal administrative remedies existed or applied to plaintiff's claims. Participation and compliance with any available administrative process or procedures, if any, has been diligently attempted and this has been found to be either nonexistent or as a practical matter impossible to feasibly comply with if any exists. In attempt after attempt (and in what became a circular pattern), telephone calls and correspondence from Ms. Poulsen and her counsel either were not responded to or Ms. Poulsen and her counsel were directed to another office that either did not respond to such calls or again directed plaintiff to another office – often an office plaintiff had already attempted to contact.

43.     As an additional factor making any process unworkable and unfeasible, most recently plaintiff and her counsel were advised that certain offices were only open one weekend a month (and on the weekend only) and also that contacts from plaintiff's attorneys were not responded to because the personnel responsible for handling such complaints (as non-attorneys) did not want to talk with attorneys.

44.     Given these circumstances, defendants cannot assert as a defense that any administrative process or procedures exist (or previously existed) to preclude or otherwise interfere with plaintiff's assertion of her action now.

45.     Through their actions and inactions, defendants and their related joint employer agencies and entities have waived the assertion of any defenses related to the exhaustion of administrative remedies or the assertion of purported time limitations relating to plaintiff's action. Among others, the doctrines of equitable estoppel and tolling apply in this case. An action in court is thus necessary.

46.     As the most recent update to plaintiff's efforts in this regard, following a June 2016 weekend conference call with a local, weekend only Air National Guard EEO staff member, plaintiff's counsel was provided with the contact information for a California Military Department Equal Opportunity Employment

COMPLAINT

Specialist and subsequently, a staff attorney assigned to such matters.  Through July/August 2016, plaintiff and her counsel have had several contacts with these EEO staff members and plaintiff has submitted various materials as part of making an administrative complaint.  This process it appears is not concluded.  In recognition of this process and while still attempting to preserve and comply with the 90 day right to sue deadline provided under the May 5, 2016 EEOC right to sue notice Ms. Poulsen was issued, on July 29, 2016, plaintiff's counsel spoke with and asked the staff attorney whether he was willing to agree to a tolling agreement to toll and extend Ms. Poulsen's EEOC right to sue rights while Ms. Poulsen pursued administrative remedies through the process being administered by the EEO specialist.  In response, the staff attorney advised that he did not have authority to do this.  Plaintiff's counsel advised that to avoid failing to comply with the EEOC right to sue deadline, plaintiff would be compelled to file suit in the absence of a tolling agreement being entered into by the parties.  Ms. Poulsen's counsel further advised that if suit was filed Ms. Poulsen was still willing to participate in good faith (as she has done previously) in any applicable, effective administrative procedures that may facilitate resolution of her employment claims in place of active litigation between the parties.  At present, these administrative procedure efforts are ongoing, and among the numerous National Guard EEO staff plaintiff's counsel has communicated with, none have advised that the filing of an action in order to comply with plaintiff's EEOC deadline will interfere with or otherwise preclude plaintiff from complying with and completing the administrative EEO process that plaintiff is now involved with.  Based on communications as recently as August 1, 2016, plaintiff's counsel anticipates a mediation with defendants will be scheduled within the next 60 days as part of these ongoing administrative procedures.  However, to avoid failing to comply with the EEOC right to sue deadline, plaintiff is filing suit prior to completion of the mediation and other aspects of that process and while that administrative process remains ongoing.

1

## JURISDICTION AND VENUE

2       47.     This action arises under various federal laws and statutes, including,

3   without limitation, Title VII of the Civil Rights Act (42 U.S.C. §2000(e), et seq.)

4   and related statutes and regulations.  This Court has subject matter jurisdiction over

5   this action pursuant to 28 U.S.C. §1331.  To the extent any state law violations are

6   asserted (or later asserted) supplemental jurisdiction would exist under 28 U.S.C.

7   §1367 because state law claims derive from a common nucleus of operative facts

8   and are related to the federal claims in that they form part of the same case or

9   controversy under Article III of the United States Constitution.

10      48.     Venue is proper in this judicial district pursuant to 28 U.S.C. 1391.

11  Venue is proper in this division because: the Court has personal jurisdiction over

12  the parties; one or more defendants resides within this district and division and all

13  defendants reside within this State; and a substantial part of the alleged events,

14  violations, and omissions giving rise to Plaintiffs' claims occurred within this

15  district and division.

16                          ## CLAIMS FOR RELIEF

17       **FIRST CLAIM FOR RELIEF FOR VIOLATION OF TITLE VII –**

18                  **UNLAWFUL DISCRIMINATION**

19          (42 U.S.C. §2000(e), et seq. and related statues and regulations)

20                  By Plaintiff Against All Defendants

21      49.     The allegations set forth in the preceding paragraphs are realleged and

22  incorporated herein by reference.

23      50.     At all times material to the complaint, the law and regulations referenced

24  herein were in full force and effect and binding on defendants.

25      51.     Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.

26  §2000(e)-2(a)(1) and related statutes and regulations:

27          It . . . [is] an unlawful employment practice for an employer to…discharge

28          any individual, or otherwise discriminate against any individual with respect

COMPLAINT

to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…"

52.     Defendants engaged in unlawful practices in violation of federal law by discriminating and retaliating against plaintiff, and wrongfully terminating plaintiff because of and on the basis of her sex.

53.     Defendants' unlawful employment practices subjected plaintiff to unlawful discrimination and retaliation and otherwise adversely affected plaintiff's status as an employee because of her sex – including resulting in plaintiff's wrongful and illegal termination.

54.     As a proximate result of defendants' discriminatory and retaliatory actions, plaintiff has suffered lost wages and other employment benefits, humiliation, mental anguish, and emotional distress. As a result of those actions and consequent harms, plaintiff has suffered such damages in an amount to be proved at trial.

55.     Defendants' unlawful employment practices were intentional, willful, malicious, and/or done with malice or with reckless indifference to plaintiff's rights as alleged herein.

56.     Due to defendants' discrimination, plaintiff has incurred and continues to incur legal expenses and attorneys' fees, all to her damage which shall be sought in a sum according to proof at trial.

## SECOND CLAIM FOR RELIEF FOR VIOLATION OF TITLE VII – UNLAWFUL RETALIATION

(42 U.S.C. §2000(e), et seq. and related statues and regulations)

By Plaintiff Against All Defendants

57.     The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference.

58.     At all times material to the complaint, the law and regulations referenced herein were in full force and effect and binding on defendants.

- 13 -

COMPLAINT

59.     Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e)-2(a)(1) and related statutes and regulations:

It shall be an unlawful employment practice for an employer to…discharge any individual, or otherwise discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…"

60.     Further, Title VII makes it an unlawful employment practice to discriminate or retaliate against an individual because an individual "has opposed any practice made an unlawful employment practice . . ., or because [such person] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a)

61.     Defendants engaged in unlawful practices in violation of federal law by discriminating and retaliating against plaintiff, and wrongfully terminating plaintiff for plaintiff's opposition to unlawful employment practices, and assistance and participation in an investigation, proceeding, or hearing into such unlawful practices.

62.     Defendants' illegal actions subjected plaintiff to unlawful discrimination and retaliation and otherwise adversely affected her status as an employee, including resulting in plaintiff's wrongful and illegal termination.

63.     As a proximate result of defendants' discriminatory and retaliatory actions, plaintiff has suffered lost wages and other employment benefits, humiliation, mental anguish, and emotional distress. As a result of those actions and consequent harms, plaintiff has suffered such damages in an amount to be proved at trial.

64.     Defendants' unlawful employment practices were intentional, willful, malicious, and/or done with malice or with reckless indifference to plaintiff's rights as alleged herein.

65.     Due to defendants' discrimination, plaintiff has incurred and continues

to incur legal expenses and attorneys' fees, all to her damage which shall be sought in a sum according to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment against defendants as follows:

1. For injunctive, equitable relief, and declaratory relief;

2. For all compensatory damages, including, without limitation, for lost wages and other employment benefits, and for physical harm and/or mental and emotional distress;

3. For applicable penalties;

4. For an award of attorneys' fees as alleged herein;

5. For costs of suit;

6. For an award of interest, including prejudgment interest, at the legal rate; and

7. For such other and further relief as the Court deems appropriate.

Dated:   August 3, 2016   Respectfully submitted,

Weilbacher & Weilbacher APC

_____

Brian R. Weilbacher, Esq.
Attorneys for Plaintiff Constance Hanson-Poulsen

- 15 -
COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiff hereby demands a jury trial in this matter on all matters triable to a

3    jury.

4

5    Dated:   August 3, 2016   Respectfully submitted,

6                                 Weilbacher & Weilbacher APC

7

8

9                     _____

10                    Brian R. Weilbacher, Esq.
                 Attorneys for Plaintiff Constance Hanson-

11                    Poulsen

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT